IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GARAN SHEKAR,                )
                             )
            Plaintiff,       )
                             )
v.                           )    No. 05 C 6812
                             )
THOMAS MORE DONNELLY,        )
                             )
            Defendant.       )

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On November 30, 2005, plaintiff Garan Shekar, ("Shekar"), filed a *pro se* complaint against defendant Judge Thomas More Donnelly ("Judge Donnelly"). (Dkt. No. 1). On April 20, 2006, Shekar filed two pending motions, a motion for sanctions against Clerk Michael W. Dobbins, ("Clerk Dobbins"), (Dkt. No. 12), and a motion seeking to vacate this court's April 3, 2006 order and to recuse this court as a matter of right. (Dkt. No. 16). For the reasons set forth below, this court grants Shekar's motion for recusal.

BACKGROUND

A. Shekar's Complaint

Shekar's complaint of November 30, 2005 seeks a declaratory judgment, injunctive relief and monetary damages pursuant to 42 U.S.C. § 1983 against Judge Donnelly and sets forth the following information. (Dkt. No. 1). Judge Donnelly is an Associate Judge in the First Municipal District of the Circuit Court of Cook County. Shekar states in his complaint that he is a graduate professional electronic engineer who owns and operates a small engineering firm. (Dkt. No. 1 at pg. 2). Shekar retained attorney Joel Handler ("Handler"), in a breach of contract

matter. (*Id.*) Although Shekar advanced money to Handler to be held in an escrow account, the parties' agreement was that Handler would only be paid on the contingency basis if Handler won the case. (*Id.*) Handler not only did not win the case, but also allegedly stole Skekar's escrow funds by illegally converting them into attorney's fees. (*Id.*)

Shekar reported Handler's alleged criminal misconduct to the Lake County State's Attorney Mike Waller because Handler is a resident of Highland Park, Illinois. State's Attorney Waller performed a three week investigation and concluded that criminal felony charges against Handler were warranted. (*Id.* at pgs. 2-3). State's Attorney Waller did not press charges, however, due to jurisdictional concerns and instead referred the matter to the Cook County State's Attorney. (*Id.* at pg. 3). A Chicago Police Commander informed Shekar that the Cook County State's Attorney Financial Crime Bureau had approved the bringing of charges against Handler. (*Id.*) The Chicago Police Commander also provided Shekar with the police report number HJ 585925. (*Id.*)

Handler became aware of Shekar's communications with law enforcement and attempted to find a way out from the forthcoming criminal charges. (*Id.*) Handler raced to the Circuit Court of Cook County and filed what Shekar characterizes as a "frivolous, baseless law suit" in the First Municipal District of Circuit Court of Cook County ("the Cook County lawsuit"). (*Id.*) The suit sought $8,059.00 in costs and expenses allegedly incurred by Handler for the underlying breach of contract case. Shekar's complaint, however, alleges that these costs and expenses were already paid and regardless Handler had no right to convert the escrow funds into attorney's fees. Handler was able to quickly obtain a default judgment, presented that default judgment to the prosecutors and police and in turn no charges were ever filed against Handler.

2

(*Id.* at pg. 4).

According to Shekar, Handler obstructed justice and engaged in a criminal conspiracy that utilized the default judgment from the Cook County lawsuit to improperly manipulated law enforcement and the prosecutors into not pressing what were otherwise valid charges relating to the alleged theft of Shekar's escrow funds. Shekar alleges in his complaint that he was not initially aware of the Cook County lawsuit because he was never served with a summons in the case. (*Id.*) Once he gained knowledge of the case, Shekar filed a special and limited appearance and the court vacated the default judgment but this was after Handler had already fraudulently convinced law enforcement not to proceed with pressing the charges. (*Id.*)

The Cook County case was on appeal on "jurisdictional issues for lack of service and no service of summons" throughout 2004. (*Id.*) However, in January 2005, while the case was still on appeal, Handler was again able to obtain a second judgment by defrauding the court. (*Id.*) This second fraudulent judgment was obtained without Shekar's general appearance in the case or any proceeding on the merits. (*Id.*) Judge Donnelly is assigned to conduct post-judgment proceeding to collect "this fraudulent and unconstitutional judgment."[1] (*Id.*) Shekar concludes the factual overview section of his complaint by stating that he "is a victim of travesty of justice, deliberate injustice knowingly committed by [Judge] Donnelly and the State Court and such gross injustice was committed with wanton, malice and fraud, all of which will pierce the judicial immunity veil and hold the defendant accountable as any other citizen who violated the

---

[1] Shekar's complaint does not state whether Judge Donnelly was initially assigned to the case or whether he entered the case at the post-judgment proceeding. Additionally, the complaint does not allege whether Judge Donnelly issued either of the two allegedly unlawful judgments. These factual questions, however, are not dispositive to the court's evaluation of the present motion.

law of the land." (*Id.*)

He expands on his factual allegations in the six counts of his complaint where he alleges that: (1) Judge Donnelly is taking these actions against Shekar in retaliation for a complaint Shekar filed against Judge Donnelly with the Judicial Inquiry Board, (*Id.* at pg. 5), (2) Judge Donnelly forced a trial on the post-judgment issues within a seven day period despite the fact that the case had been on appeal for more than a year, (*Id.*), (3) Judge Donnelly knowingly allowed a perjured affidavit from a special process server named Jonathan Griffin ("Griffin"), who was working for Handler and falsely impersonated a sheriff's officer when he tried to serve Shekar with a post-judgment citation to discover assets, (*Id.* at pg. 6), (4) Shekar characterizes Judge Donnelly's actions in this case as a "judicial dictatorship and judicial tyranny," (*Id.* at pg. 9), (5) Judge Donnelly has inappropriately denied 15 motions that he filed in his state court case, (*Id.* at pg. 10), and (6) Judge Donnelly has "acted in a manner [of] conduct unbecoming of a constitutional officer by acting as a party to a litigant rather than a neutral judicial officer. (*Id.* at pg. 13).

Shekar's complaint alleges six counts: Count One alleges a constitutional violation of Due Process and Violation of the First Amendment, Count Two alleges conspiracy to obstruct justice; accessory and accomplice to fraud on court, Count Three alleges violation of Equal Protection of law, Count Four alleges intentional infliction of emotional distress, Count Five argues that veil of judicial immunity should be pierced and punitive damages should be awarded in this case, Count VI seeks the "extra ordinary" remedy of enjoining the state court process and dismissing the judgment as unconstitutional and invalid. He demands monetary damages in excess of two million dollars and an injunctive order from this court stopping the state court

4

proceedings and dismissing the judgment in state court as unconstitutional.

B.  Proceedings Before This Court Prior to the Pending Motions for Recusal and Sanctions

Shekar filed his complaint before this court on November 30, 2005 but there was no proof in the record of either payment of the $250 filing fee[2] nor a petition to proceed *In Forma Pauperis* ("IFP").  This court issued an order on December 15, 2005 instructing Shekar to pay the filing fee, file a petition to proceed IFP or file proof of prior payment by December 28, 2005.  (Dkt. No. 4).  This court also warned Shekar that failure to pay the filing fee or file a petition to proceed IFP by December 28, 2005 would result in the dismissal of his case.  (*Id.*)

On December 29, 2005, this court reviewed the docket and saw no proof of payment or filing of a petition to proceed IFP.  Consequently, this court issued an order dismissing Shekar's case for failure to comply with this court's December 15, 2005 order and entered judgment in this case on December 29, 2005.  (Dkt. Nos. 6, 7).  However, Shekar did provide a $250.00 check to the clerk's office on December 28, 2005 but this was not reflected on the docket until December 29, 2005.  (Dkt. No. 5).  The court recognized the error and entered an order on January 3, 2006 vacating the December 29, 2005 order and judgment and reinstating the case. (Dkt. No. 8).

On February 14, 2006, a letter dated February 6, 2005 was entered in the record.  (Dkt. No. 10).  This letter sent to Shekar from the clerk's office informed Shekar that his December 28, 2005 check had been returned twice for insufficient funds.  (*Id.*)  The clerk's office instructed Shekar to provide a cashier's check or money order in the amount of $295 (the

---

[2] The fee for filing a civil case was increased to $350 on April 9, 2006 pursuant to the Deficit Reduction Act of 2005.  PL 109-171, at pg. 183; 28 U.S.C. § 1914(a).

original $250 fee plus a $45 service fee for returned checks). This court issued an order on April 3, 2006 noting the February 6, 2006 letter informing Shekar of situation with his check and instructing Shekar to pay the $295 amount by April 21, 2006 or his case would be dismissed. (Dkt. No. 11). Shekar has not paid the $295 as instructed by the court. Instead, he filed the pending motions seeking sanctions against Clerk Dobbins and to recuse this court.[3] (Dkt. Nos. 12, 16).

C. Pending Motions for Recusal and Sanctions

In his motion for sanction against Clerk Dobbins, Shekar argues that he paid the $250 filing fee on December 27, 2005 and this was reflected on the docket by December 28, 2005. (Dkt. No. 12 at pg. 1). Shekar alleges that this court's courtroom deputy and Clerk Dobbins "deliberately misrepresented [to this] Court that as of December 29, 2005 that the court docket does not reflect" that the payment was not made with the prejudicial result of the dismissal of his case. (*Id.* at pg. 1-2). Shekar's position is that in light of the dismissal he stopped payment on the check, yet Clerk Dobbins continued to try to deposit the check resulting in the incurring of fees by Shekar at his bank. (*Id.*) Clerk Dobbins has allegedly refused to return the check to Shekar. (*Id.*) Shekar states that Clerk "Dobbins indulged in [the] criminal conduct of extortion and misrepresentation misrepresenting [to] the court again that [the] $45.00 fee was due, due to alleged 'insufficient funds returned check,' as that is the only way [Clerk] Dobbins can extort [the] additional $45.00 for check return fee." (*Id.* at pgs. 2-3).

Shekar goes on to allege that Clerk "Dobbins' discourteous, arrogant, unprofessional conduct warrants disciplinary action, as this court also happens to be in the Executive Committee

---

[3] Shekar has not filed any return of service in the docket as to Judge Donnelly.

which appointed the clerk and in a way has a supervisory authority to reprimand, discipline for [Clerk] Dobbins' misconduct." Shekar seeks (1) sanctions against Clerk Dobbins including termination of his employment for "his indulgence in criminal conduct of extortion of a public citizen by manipulating wrongfully a $45.00 fee assessment, (2) an order that Clerk Dobbins return the original check so that Shekar can make a payment of the filing fee, (3) waive the $45.00 filing fee as Shekar stopped payment in light of his impression that his case had been wrongly dismissed and Shekar promises to pay the filing fee within the 30 days of the return of his original check, and (4) restrain Clerk Dobbins from having any *ex parte* communications with the court or other judges and impose additional sanctions to prevent him from his attempts to "short circuit [the] Court system by orchestrating cases for dismissal frivolously and thereby obstructing justice." (*Id.* at pgs. 3-4).

In addition to seeking sanctions against Clerk Dobbins, Shekar moves for this court's recusal. (Dkt. No. 16). Shekar argues that this court could have continued the matter for a week instead of dismissing the case on December 29, 2005. (*Id.* at pg. 2). He states in the pending motion

> The intemperate and impatience shown by this court which seems to be very eager to dispose [of] this particular docket very quickly raises questions as to the partiality, bias, [and] prejudice this court seems [to have] already developed against the plaintiff. It is remarkable that the speed at which this court had acted in dismissing the case for the frivolous 'alleged reasons' of failure to pay the filing fee (when it was actually paid), and how remarkable the court 'singled out' this particular plaintiff to cause him harm by dismissing this case once already, shows that this court is very anxious to get rid of this court for whatever reasons and whatever *ex parte* communications this Court may be having with other parties including Clerk Dobbins. It is further phenomenal that when the court has so many other pressing cases and loads of files, it seems this court was waiting like a hawk for December 29, 2005 due date for [the] filing fee to arrive and in spite of the court computer showing that the fee was paid, proceeded with dismissing the case any way.

7

(*Id.*)

Shekar adds an additional allegation that he did not receive this court's April 3, 2006 order about the returned check until April 17, 2006 and the envelope was post marked April 14, 2006. (*Id.* at pg. 3) He alleges that this is another effort by Clerk Dobbins and this court to prevent him from filing a motion to vacate within 10 days. Shekar also challenges the court's April 3, 2006 order alleging that there are "no Federal laws or statutes which extend authority to Federal Judges to act as an attorney or spokesperson or an accountant for the clerk." (*Id.*) Shekar also alleges that this court's April 3, 2006 order is an attempt to make the clerk's office's letter of February 6, 2006 into a court order. Shekar concludes by alleging that

> The conduct of this court by virtue of [the] April 3, 2006 and December 29, 2005 orders establish[es] bias, prejudice, and shows that this Court is overreaching its authority and acting like an accountant for the clerk, rather than an impartial jurist, and try to indulge in arm twisting tactics of litigant citizens - plaintiffs, which are all outside the democratic norms of the Federal judiciary and violates the constitutional guidelines of a Federal Jurist and breaches the constitutional rights of plaintiff.

(*Id.*) Shekar concludes by seeking this court's recusal, requesting that this case be returned for reassignment and the vacating of the April 3, 2006 order. (*Id.* at pg. 4).

## ANALYSIS

This court must first consider Shekar's motion for recusal. If this court concludes that recusal is appropriate, then it must return the case to the Executive Committee for reassignment, N.D. Ill. IOP 13(f)(1), and leave all remaining questions for the next judge assigned to this case. A party believing that the court is bias, prejudice or lacks impartiality may seek the court's recusal pursuant to either 28 U.S.C. § 144 or 28 U.S.C. § 455(a). Shekar's pending motion for recusal does not cite to either § 144 nor § 455 so this court shall consider Shekar's recusal

motion under both statutes. Additionally, he does not point to any extrajudicial sources of bias or prejudice instead arguing that this court's actions in this case requires this court's removal from this case.

A. General Principles of Recusal

In *Liteky v. United States*, the Supreme Court discussed the concepts of bias and prejudice as they relate to a judge's recusal. 510 U.S. 547 (1994). The *Liteky* Court noted that an although extrajudicial bias or prejudice is the most common reason for recusal, a court's actions within the proceedings could result in demonstrating a bias or prejudice sufficient to mandate a court's recusal. *Id.* at 551. Despite the fact that a court's actions within a proceeding could mandate recusal, the Supreme Court was very clear to point out this would be very rare for (1) judicial rulings alone almost never constitute a valid basis for recusal, and (2) opinions formed by a judge during the proceedings are not a valid basis for recusal unless the judge demonstrates a deep-seated favoritism or antagonism that would make a fair judgment impossible. *Id.* at 555.

This court takes a motion for recusal very serious because the motion questions this court's impartiality and ability to properly perform its judicial duty. A court must also be concerned for the potential abuse in these motions because a party may be inclined to file this motion to "judge shop" in hopes of obtaining a more sympathetic judge or avoid appealing unfavorable rulings to the court of appeals. The public's interest must also be considered because the public must have faith that its judicial officials are properly performing their duties because all acts in this court are done on the public's behalf. Lastly, the court recognizes that if it does recuse itself from this matter, the court's participation in this matter ends but another

9

judge must take up this case.

A.  28 U.S.C. § 144[4]

"A motion to disqualify under § 144 requires a showing of *actual bias*."  *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004) (citing *United States v. Balistrieri*, 779 F.2d 1191, 1201 (7th Cir. 1985) (emphasis in original)).  "Only personal animus or malice on the part of the judge can establish bias."  *Fairley v. Andrews*, 423 F. Supp. 2d 800, 803 (N.D. Ill. 2006) (quoting *Hoffman*, 368 F.3d at 718).  "A trial judge has as much of an obligation not to recuse himself when there is no occasion for him to do so under § 144 as there is for him to do so when the converse prevails."  *Hoffman*, 368 F.3d at 717 (quoting *United States v. Ming*, 466 F.2d 1000, 1004 (7th Cir. 1972)).  Judicial rulings alone almost never constitute a valid basis for disqualification.  *Id.* at 718 (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

"Recusal under § 144 is mandatory once a party submits a timely and sufficient affidavit and her counsel presents a certification stating that the affidavit is made in good faith."  *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993) (citing *Balistrieri*, 779 F.2d at 1199-1200).  "A § 144 affidavit is timely if it is filed at the earliest moment after the movant acquires knowledge

---

[4] 28 U.S.C. § 144.  Bias or prejudice of judge

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time.  A party may file only one such affidavit in any case.  It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

of the facts that demonstrate the basis for the disqualification." *Franzen v. Ellis Corp.*, No. 03 C 641, 2004 WL 406822, at *1 (N.D. Ill. Feb. 12, 2004) (citing *Sykes*, 7 F.3d at 1339).

The facts in affidavit must be "legally sufficient and demonstrate the judge's personal bias and prejudice against a party," and the "court may only credit fact that are sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient." *Hoffman*, 368 F.3d at 718 (citations omitted). Factual averments must be stated with particularity in the affidavit as to the time place, person and circumstances. *Tezak v. United States*, 256 F.3d 702, 717 (7th Cir. 2001). This court must consider properly presented factual assertions as true, even when it knows them to be false, but this court is not bound to accept the movant's proposed conclusions drawn from these facts. *Id.* The requirements of § 144 are strictly construed to prevent abuse because the statute is heavily weighted in favor of recusal. *Hoffman*, 368 F.3d at 718 (quoting *Sykes*, 7 F.3d at 1339)).

This court must deny Shekar's motion for recusal under § 144 because he has failed to comply with § 144 affidavit requirements. He only provides a motion stating his alleged facts and conclusions but fails to file an affidavit in the record as required under § 144. This court must follow the Seventh Circuit's instruction to strictly enforce § 144's affidavit requirements because the statute is heavily weighted in favor of recusal. *Id.* Even if this court has the discretion to ignore Shekar's failure to provide the required affidavit due to Shekar's *pro se* status, which this court of course cannot do, Shekar would still lose on the merits of his motion. There is no evidence in the record demonstrating that this court is actually biased against Shekar. He argues that bias is demonstrated by this court's apparent eagerness to dismiss his case coupled with this court's apparent approval and ratification of Clerk Dobbins alleged criminal

actions. Shekar, however, has provided no evidence to compare the court's treatment of his case in relationship to other cases. This court sets deadlines in cases and expects parties to comply with these deadlines in everyone of the court's cases. The court also expects its staff to monitor compliance with court imposed deadlines and bring a party's failure to comply with a court imposed deadline to the court's attention.

Shekar does not dispute that he failed to pay his filing fee when he initially filed his complaint on November 30, 2006. This court set a date of December 28, 2005 for the payment of the fee, (Dkt. No. 4), not December 29, 2005 as Shekar alleges in his filings. The court's staff reviewed the docket in his case on December 28, 2005, did not see the payment, and brought the matter to this court's attention. Shekar's December 28, 2005 payment was not reflected on the docket until December 29, 2005 and when Shekar brought this to the court's attention, the court immediately reinstated the case on January 3, 2006. Shekar characterizes this activity on December 28, 2005 as the "court waiting like a hawk" looking for any reason to dismiss the case. (Dkt. No. 16, at pg. 2). The court believes that this is an example of its efficient and timely management of its docket. Regardless, this court cannot see how Shekar was prejudiced, must less how this court is actually biased against Shekar based on the December 28, 2005 dismissal, when the court immediately corrected the error on January 3, 2006.

The court also notes that Shekar has failed to pay the filing fee at any point in this case. He seems to implicitly argue that he should be excused from paying the fee, or at least he wants his initial check, a check which either lacked sufficient funds or he stopped payment on, before providing a second check. The court sees these issues as clerical errors, not criminal conduct, that are easily rectified when brought to the court's attention like the correction that the court

entered on January 3, 2006 by reopening the case.

B.  28 U.S.C. § 455[5]

"Section 455(a) is concerned with whether there would be an appearance of [impropriety] if a given judge presided over a case." *In re African-American Slave Descendants Litig.*, 307 F. Supp. 2d 977, 983 (N.D. Ill. 2004). "Section 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits. This is an objective inquiry." *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996). As the Seventh Circuit has explained in *In re Hatcher*,

> An objective standard creates problems in implementation. Judges must imagine how a reasonable, well-informed observer of the judicial system would react. ... Drawing all inferences favorable to the honesty and care of the judge whose conduct has been questioned could collapse the appearance of impropriety standard under § 455(a) into a demand for proof of actual impropriety. So although the court tries to make an external reference to the reasonable person, it is essential to hold in mind that these outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be.

150 F.3d 631, 638 (7th Cir. 1998).

The court has no bias or prejudice towards Shekar. Shekar has been provided fair and equal treatment that the court provides to all parties appearing before it. Shekar failed to pay his initial filing fee and the court required that he pay the fee by a set date. The court quickly corrected the December 28, 2005 dismissal error when it was brought to the court's attention. However, Shekar continues not to pay the required fee and continues not to comply with the requirements necessary for Shekar's case to proceed. In light of the Shekar's difficulties, the

---

[5] 28 U.S.C. § 455. Disqualification of justice, judge, or magistrate judge.

(a)   Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

court believes that an outside reasonable observer would conclude that it would be best for this court to recuse itself from this case and allow Shekar to start anew before a different judge. This ruling does not excuse Shekar from complying with the rules, and this court is not taking a position as to Shekar's arguments regarding Clerk Dobbins. Perhaps a fresh start for Shekar would be best for all involved so that justice can be appropriately served.

## CONCLUSION

For the reasons set forth above, Shekar's April 20, 2006 motion (Dkt. No. 16) is granted pursuant to 28 U.S.C. § 455(a) to the extent that he is seeking this court's recusal. This court takes no action on Shekar's other requested relief and leaves consideration of those matters to the next judge assigned to this case. Pursuant to Internal Operating Procedure 13(f)(1), this case is transferred to the Executive Committee.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
United States District Judge

Date: June 29, 2006